IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| AF HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION NO.: 3:12CV55 |
| | ) |
| vs. | ) |
| | ) MEMORANDUM OF LAW IN SUPPORT |
| | ) OF MOTION TO QUASH |
| JOHN DOES 1-4, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH**

COMES NOW Defendant John Doe 2, a.k.a. "Z.L." ("Z.L."), by counsel, and hereby submits the following Memorandum of Law in Support of Motion for Reconsideration of Order Granting Early Discovery and Motion to Quash.

**I. Introduction**

Over the past several years, copyright owners of pornographic films across the nation have attempted to take advantage of federal joinder rules in order to sue numerous John Doe defendants within a single complaint. These complaints are for copyright infringement via the Internet, and the complaints generally allege the use of peer-to-peer programs such as BitTorrent to download and/or upload copyrighted works. Some of these cases attempt to join defendants by the dozens, but many extend to hundreds and even thousands of unnamed defendants. The copyright owners then request early discovery in order to obtain the identities and contact information of these multiple John Does. Some courts have opined that the rationale for the joinder of multiple John Doe defendants in these copyright cases is an attempt by plaintiffs to cheaply "identify hundreds of Doe defendants through pre-service discovery and facilitate mass settlement." *See, for example, On the Cheap, LLC v. Does 1-5011*, Case No. C10-4472, *11

1

(Zimmerman, M.J.) (N.D. Cal. Sept 6, 2011) (quoting *IO Group, Inc. v. Does 1-435*, 2011 U.S. Dist. LEXIS 14123, *9 (N.D. Cal. Feb. 3, 2011)). *See also Patrick Collins, Inc. v. John Does 1-58*, Case No. 3:11-cv-00531-JAG, at *4 (Gibney, D.J.) (E.D. Va. Oct. 5, 2011) ("The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does") and *Third Degree Films v. Does 1-47*, Case No. 1:12-cv-10761-WGY, at *1 (Young, D.J.) (D. Mass. Oct. 2, 2012) ("In recent months, this Court has grown increasingly troubled by 'copyright trolling,' specifically as it has evolved in the adult film industry. The Court is not alone in its concern…").

Plaintiff is the alleged copyright owner of the hardcore pornographic film "Sexual Obsession." Plaintiff claims that four John Does, including Z.L., infringed on its copyright for the pornographic work by downloading and uploading it via BitTorrent.

Plaintiff previously filed suit against seventy-seven defendants in the Eastern District of Virginia, Norfolk Division under the case name *AF Holdings LLC v. Does 1-77*, Case No.: 2:11-cv-00383-RBS-TEM. In that case, Plaintiff filed a motion to conduct early discovery to send subpoenas to multiple Internet Service Providers ("ISPs") and to obtain the names and addresses of the ISPs' customers who were assigned to various Internet Protocol ("IP") addresses; these IP addresses allegedly downloaded the pornographic film. *See* Plaintiff's memorandum of law in support of its motion to conduct early discovery, a true and correct copy of which is attached hereto and made a part hereof as Exhibit A. Plaintiff claimed to need "Defendants' actual contact information to be able to communicate with them and **name them in this lawsuit**." Exhibit A, p. 5 (emphasis added). The court granted Plaintiff's motion, and Plaintiff thereafter obtained the name and contact information of an individual with the initials W.L. ("W.L.") from W.L.'s ISP.

However, after the Eastern District of Virginia ordered Plaintiff to show cause as to why the suit should not be dismissed for Plaintiff's failure to serve any of the John Doe defendants, Plaintiff filed for voluntary dismissal without prejudice on November 21, 2011.

Despite having dismissed the Eastern District of Virginia case, Plaintiff sent a demand letter to W.L. on November 28, 2011, demanding $3,400.00 in exchange for not naming W.L. in the Complaint, which Plaintiff failed to indicate had been dismissed.  During the next several months, Plaintiff sent two more demand letters to W.L., threatening to litigate unless W.L. paid increasing settlement amounts; in both letters, Plaintiff referenced the Eastern District of Virginia case but failed to state that the case had been dismissed.  Plaintiff's final letter to W.L. was dated September 26, 2012, in which Plaintiff stated: "… **you** were observed by my client … engaging in what my client alleges to be a willful copyright infringement … [T]his letter is to advise you that **you** will be sued … If you fail to [discuss settlement], I will file the suit against **you** on behalf of my client" (emphasis added).

On October 10, 2012, approximately ten months after dismissing the Eastern District of Virginia case, Plaintiff filed a new suit against four John Doe defendants in this Court.  Contrary to what Plaintiff had threatened in its demand letters, Plaintiff did not name W.L. in the suit. Instead, Plaintiff filed a new motion to conduct early discovery to depose W.L. since it suddenly claimed that "**Plaintiff cannot ascertain, with certainty, whom the actual infringers were** at this time and who should be the appropriate Defendant(s)." Doc. 5, p. 2 (emphasis added).  The Court granted Plaintiff's motion as to W.L. in an Order dated November 15, 2012.  Doc. 16. W.L. was subsequently deposed by Plaintiff, and from that deposition, Plaintiff obtained Z.L.'s information. "W.L. provided information to the Plaintiff that leads the Plaintiff to believe that a family member of W.L. who was living at the home of W.L. at the date and time of the

infringement may have indeed been the infringer, or at the very least may have pertinent information about the infringement activity." Doc. 18, pp. 1-2. Plaintiff clearly believes that Z.L. is John Doe 2; otherwise, it certainly would have either named W.L. as a defendant or dropped John Doe 2 from the case.

However, rather than naming Z.L. as a defendant, Plaintiff filed yet *another* motion to conduct early discovery, this time to depose Z.L. Plaintiff claimed that despite having deposed W.L. and gained Z.L.'s information, it still "**cannot ascertain, with certainty, whom the actual infringers were** at this time and who should be the appropriate Defendant(s)." *See* Doc. 18, p. 2 ("The Plaintiff will not file a memorandum of law in support of this motion, but will adopt the same position of its previous memorandum of law filed in its first motion to conduct Rule 30 depositions", *i.e.,* will rely upon Doc. 5). The Court granted Plaintiff's motion in an Order dated December 20, 2012 ("Order"). Doc. 19. Plaintiff prepared a deposition subpoena to Z.L. that was dated December 21, 2012 ("Subpoena"), setting a deposition for January 16, 2013 and requesting that Z.L. produce certain documents.

For the reasons below, Z.L. moves the Court to modify the Order to deny Plaintiff leave to take early discovery and to quash the Subpoena.

**II. The Court Should Reconsider its Order and Deny Plaintiff Leave for Early Discovery**

**A. Standard of Review**

The Court has power to modify interlocutory orders pursuant to Fed. R. Civ. P. 54(b): "… any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties … may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." The power to grant relief under Rule 54(b) "is committed to the discretion of the district court." *Am. Canoe*

*Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003).  Z.L. was not afforded an opportunity to respond to Plaintiff's Motion for Leave to Take Discovery prior to the Court's decision; although Z.L. is John Doe 2, since it is not yet named, it was not served with the Complaint or Plaintiff's Motion for Leave to Take Discovery.  Because Z.L. believes it is unfairly prejudiced by Plaintiff's ability to conduct early discovery, Z.L. respectfully requests that the Court reconsider its Order and deny Plaintiff leave to take early discovery.

Per Fed. R. Civ. P. 26(d)(1), "[a] party may not seek discovery from **any source** before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order" (emphasis added).  Federal courts have held that "[t]he discovery rules contained in the Federal Rules of Civil Procedure provide tools for a court to adjust the discovery time outlined by Rule 26, and '**if warranted**, to expedite the time for responding to the discovery sought.'" *ForceX, Inc. v. Technology Fusion, LLC*, 2011 WL 2560110, at *3 (Miller, M.J.) (E.D. Va. June 27, 2011) (quoting *Physicians Interactive v. Lathian Sys., Inc.*, 2003 WL 23018270, at *4 (E.D. Va. Dec. 5, 2003)) (emphasis added).  "Courts have found that immediate discovery 'should be granted when some **unusual circumstances or conditions exist** that would **likely prejudice the party** if he were required to wait the normal time.'" *Id.* (quoting *Fimab–Finanziaria Maglificio Biellese Fratelli Fila, S.p.A. v. Helio Import/Export, Inc.*, 601 F.Supp. 1, 3 (S.D. Fla. 1983)) (emphasis added).  Courts in the Fourth Circuit have adopted different tests to determine whether to grant expedited discovery.

Prior to 2008, many courts in the Fourth Circuit applied the first two prongs of the *Blackwelder* "sliding scale" test for preliminary injunctions (*Blackwelder Furniture Co. of Statesville v. Seilig Mfg.*, 550 F.2d 189 (4th Cir. 1977)) to determine whether to grant expedited

discovery. *ForceX*, 2011 WL 2560110, at *4. These two prongs were "(1) The likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) The likelihood of harm to the defendant if the preliminary injunction is granted." *Id.* However, in light of a Supreme Court ruling, the *Blackwelder* preliminary injunction test was overruled by the Fourth Circuit in *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47, *overruling Blackwelder*, 550 F.2d 189, *on reconsideration on other grounds*, 2010 U.S.App. LEX IS 11627 (4th Cir. June 8, 2010). The Fourth Circuit's new preliminary injunction test is a "stricter standard" that requires a plaintiff to "demonstrate by a 'clear showing'" each of four factors: "(1) Plaintiff is likely to succeed on the merits at trial; (2) Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) The balance of the equities tips in plaintiff's favor; and (4) An injunction is in the public interest." *ForceX*, 2011 WL 2560110, at *4 (quoting *The Real Truth About Obama*, 575 F.3d at 346). Some Fourth Circuit courts have thus adopted part of the *The Real Truth About Obama* preliminary injunction test.

The Eastern District of North Carolina has adopted the "reasonableness" or "good cause" test, "finding that 'a standard based upon reasonableness or good cause, taking into account the totality of the circumstances,' was the more appropriate standard and less burdensome than a preliminary injunction standard." *ForceX*, 2011 WL 2560110, at *5 (quoting *Dimension Data North America, Inc. v. Netstar-1*, Inc., 226 F.R.D. 528 (E.D.N.C. 2005)). In contrast, the Eastern District of Virginia has rejected the "reasonableness" test in favor of using the new "stricter standard" preliminary injunction test because "granting court relief outside of the federal rules should be limited to unusual circumstances, and only where the plaintiff has made a clear showing that such relief is necessary." *Id.* at *5. "The balancing of the hardships has been discounted by the Supreme Court in favor of proof on each of the four elements, and emphasis

placed on a strong showing of success on the merits of the action by the Plaintiff, and a **showing that irreparable harm is 'likely' and not simply 'possible**.'" *Id.* The Eastern District of Virginia has emphasized the first two elements from *The Real Truth About Obama* case. *Id.* (emphasis added).

Regardless of the test used, Plaintiff failed to meet either the "good cause" test or the "stricter standard" test for its Motion for Leave to Take Discovery, and the Court should therefore reconsider its Order and deny early discovery.

### B.  Plaintiff has not shown "Good Cause" or "Reasonableness"

There are no unusual circumstances or conditions in this case that would prejudice Plaintiff if the Court reconsidered its Order and denied expedited discovery.  Unlike other copyright infringement cases where courts have granted expedited discovery so that a plaintiff may subpoena ISPs to obtain potentially time-sensitive IP address assignment records, in this case, Plaintiff has *already* obtained the IP address assignment records, which led to W.L. *Hard Drive Productions, Inc. v. John Doe¸* Case No. S-11-3074, at *3 (Delaney, M.J.) (E.D. Cal. Jan. 11, 2012), *recons. denied on Mar. 15, 2012*.  Through deposing W.L., Plaintiff also knows Z.L.'s identity and contact information, that Z.L. lived with W.L. at the time of the alleged infringement, that Z.L. is related to W.L., and that Z.L. allegedly used W.L.'s Internet access.  It is worth noting that after Plaintiff obtained W.L.'s identity, it waited **ten months** to file suit in this Court.  Plaintiff's delay in re-filing – and multiple demand letters to W.L. accusing it of copyright infringement – shows that Plaintiff had already obtained any potentially "time-sensitive" material from its earlier discovery.  In a case with a similar scenario, the Eastern District of California applied the "good cause" test and rejected requests for expedited discovery to depose the owner of an IP address.  *Id.*  The Eastern District of California held that "assuming

7

plaintiff has a good faith basis for its claims, plaintiff can name Mr. Goldberg [the John Doe] as a defendant and serve him with process. Simply put, plaintiff is not unable to pursue its lawsuit to protect its copyrights absent expedited discovery." *Id*. *See also Pink Lotus Entertainment, LLC v. John Doe*, Case No. 2:11-cv-03073, at *6 (Newman, M.J.) (E.D. Cal. Jan. 20, 2012) ("… plaintiff has *already discovered* the name and contact information of the account holder of the IP address involved … plaintiff can name Mr. Polan as a defendant and serve him with process") (emphasis in original). Similarly, Plaintiff in this case did not demonstrate any good cause showing why "expedited discovery" is needed over simply naming Z.L. so that discovery may be conducted through normal means. There is nothing that prohibits Plaintiff from proceeding, except its own choice not to name Z.L. Normal discovery would reveal whether Z.L. actually committed copyright infringement or whether it knows of anyone else who might have committed the alleged infringement. Instead, Plaintiff appears to want to circumvent the Federal Rules of Civil Procedures' lengthier and more expensive process of personally serving Z.L. with the Complaint, waiting for Z.L. to file a Motion to Dismiss, preparing a response to the Motion to Dismiss, having oral arguments on the Motion to Dismiss, waiting for Z.L. to file an Answer if the Motion to Dismiss is denied, attending a Rule 26(f) conference, and then submitting discovery requests, including deposition notices, to Z.L. while being subjected to discovery requests from Z.L. in return.

      However, the Federal Rules of Civil Procedure should not be disregarded simply because Plaintiff claimed, unconvincingly, that it will suffer prejudice should the motion not be granted. The primary reasons for Plaintiff's motion were, apparently, that 1) it does not know who the true defendants in this case are so it cannot proceed in this case and 2) it claimed that "the infringement is ongoing and continuous, necessitating immediate relief." Doc. 5, p. 4. As for the

first reason, Plaintiff knows who Z.L. is and is only prevented from "moving the case forward" by its refusal to name Z.L. as a defendant. Plaintiff implied that it does not really know if Z.L. is the true defendant, a claim that directly contradicts its earlier statement to the Eastern District of Virginia that it needed early discovery on the ISPs to obtain John Doe 2's name and "name [it] in this lawsuit" (Exhibit A), as well as Plaintiff's claims to this Court that deposing W.L. would lead to John Doe 2's identity (Doc. 5, pp. 2, 4-6). Plaintiff also stated that "[Z.L.] can identify the person, under oath and on the record, for whom the Plaintiff should direct litigation towards" (Doc. 5, p. 5), but it seems clear that Plaintiff believes Z.L. to be the actual defendant who committed the alleged copyright infringement. If Z.L. identifies another individual at deposition who may have committed infringement, will Plaintiff seek yet further motions and depositions before a Complaint has even been served on anyone, all in the name of "expedited discovery"?

As for the second reason, Plaintiff offered no evidence that "the infringement is ongoing and continuous," but instead it simply stated so in conclusory fashion. "Ongoing and continuous" infringement is extremely unlikely given that the IP address Z.L. purportedly used was linked to alleged infringing activity from almost two years ago at a specific time on April 15, 2011. Doc. 1-1. Furthermore, Plaintiff knows that W.L. and Z.L. are related; assuming *arguendo* that Z.L. infringed on Plaintiff's copyrights, W.L. would likely have informed Z.L. of the pending litigation, and thus it is improbable that any infringement by Z.L. would have continued. Finally, Plaintiff waited ten months to re-file suit in the Western District of Virginia; if Plaintiff genuinely thought infringement was ongoing, certainly it would have re-filed more promptly. Thus, the claim of "ongoing and continuous" infringement is not credible, and there is no genuine prejudice that Plaintiff would face if it were forced to go through the normal litigation process.

Furthermore, contrary to what Plaintiff claimed, there is a very real and large prejudice against Z.L. if early discovery is permitted to proceed. Plaintiff's request for expedited discovery was extremely vague, and it stated in its motion that it wanted to depose Z.L. "solely for the purpose of protecting Plaintiff's rights as set forth in its Complaint." Doc. 18, p. 2. Such a broad, ambiguous, and completely empty request is not narrowly tailored for the extreme remedy of expedited discovery, and courts have generally only permitted "narrowly tailored" requests that "see[k] the minimum amount of information needed to identify defendants." *Pink Lotus Entertainment*, Case No. 2:11-cv-03073, at *7. Although Plaintiff claimed its "request is limited to information to determine who was using the IP address on the date the infringement occurred" and "to the Defendant's identity" (Doc. 5, p. 5), the Subpoena demands that Z.L. produce its work schedule from April 10, 2011 through April 17, 2011. Z.L.'s work schedule is irrelevant information that is clearly not "limited" to the purposes of determining John Doe 2's identity or determining who was "using the IP address on the date the infringement occurred" (April 15, 2011). More generally, Plaintiff is requesting a deposition of a person it knows may be a defendant yet refuses to actually name, presumably because doing so would be time-intensive and expensive for Plaintiff. Instead, Plaintiff would like to conduct broad discovery of Z.L., without permitting Z.L. an opportunity to file a Motion to Dismiss, to file an Answer, or to conduct discovery on Plaintiff in return. Essentially, Plaintiff seems to want a very one-sided opportunity to depose Z.L., and potentially harass it in person, at minimal cost and effort.

When taken as a whole, Plaintiff's Motion for Leave to Take Discovery was unreasonable. Plaintiff did not show likelihood of prejudice under unusual circumstances or conditions, there is a very real prejudice to Z.L. should early discovery be allowed, and Plaintiff's request for discovery was extremely broad and not narrowly tailored. Thus, the Court

should reconsider its Order and deny Plaintiff's leave for early discovery.

### C. Plaintiff Has Not Shown It is Likely to Succeed on the Merits or that it Will Suffer Irreparable Harm

Under the "stricter standard" test adopted by the Eastern District of Virginia, Plaintiff has not shown it is likely to succeed on the merits or that it is likely to suffer irreparable harm, and therefore the Court should reconsider its Order and deny Plaintiff leave to take early discovery.

First, Plaintiff has not demonstrated that it is likely to succeed on the merits of its claims of copyright infringement, contributory infringement, or negligence.  Its *only* evidence that any infringement took place was that it allegedly recorded an IP address allegedly used by Z.L. on a particular time and date as part of a Bittorrent "swarm" for its pornographic film. Doc. 1, ¶¶ 21-22.  However, as admitted by the Plaintiff, "this is a simply snapshot observation of when each Defendant was observed in the BitTorrent swarm." Doc. 1, ¶ 22.  There are no other factual allegations in the Complaint that any infringement took place or that Z.L. did anything unlawful, merely legal conclusions.  Thus, Plaintiff has not shown likelihood that it will succeed on the merits for any of its causes of action.  Furthermore, federal courts have held that negligence is preempted by the Copyright Act's contributory infringement where the plaintiff alleges that the defendant knew about the infringement, which is what Plaintiff does in its Complaint.  Doc. 1, ¶ 45.  *See for example Liberty Media Holdings, LLC v. Tabora*, Case No. 1:12-cv-02234-LAK, at *4-5 (Kaplan, D.J.) (E.D. NY. July 9, 2012) ("Tabora, with full awareness that Whetstone was using his Internet connection to pirate copyrighted motion pictures, either (1) 'actively participated' and, indeed, 'collaborated and conspired' to carry out the infringement or (2) failed to put a stop to the use of his Internet access for that purpose. In either case, his alleged activities fall squarely within the realm of contributory infringement").  Another federal court has held that negligence cannot stand because a defendant does not have a duty to protect against infringement

11

of a plaintiff's copyrights, absent a special relationship between plaintiff and defendant. *AF Holdings, LLC v. John Doe,* Case No. 4:12-cv-02049-PJH, at *4 (Hamilton, D.J.) (N.D. Cal. Sep. 4, 2012) ("AF Holdings has not articulated any basis for imposing on Hatfield a legal duty to prevent the infringement of AF Holdings' copyrighted works, and the court is aware of none. Hatfield is not alleged to have any special relationship with AF Holdings that would give rise to a duty to protect AF Holdings' copyrights").

Second, Plaintiff has not shown it will suffer irreparable harm, for the reasons discussed *supra*. Plaintiff has stated, without any evidence, that the infringement allegedly committed by Z.L. is still ongoing and so it is suffering irreparable harm. However, Plaintiff must show that irreparable harm is "likely," not merely "possible", but in this instance, Plaintiff's claims of irreparable harm are extremely unlikely. Furthermore, Plaintiff's failure to move forward with the case is limited primarily by its refusal to name Z.L. in this litigation. Should Plaintiff name Z.L., it could proceed with litigation and eventually conduct discovery upon Z.L.

The Eastern District of Virginia has stressed that expedited discovery is "relief outside of the federal rules," so it should be "limited to unusual circumstances" and only upon the plaintiff making "a clear showing that such relief is necessary." *ForceX*, 2011 WL 2560110, at *4-5. Expedited discovery is simply not necessary in this case, as Plaintiff could name Z.L. and follow the Federal Rules of Civil Procedure to eventually properly submit discovery requests and subpoena notices to Z.L. Thus, Plaintiff cannot show it is likely to succeed on the merits or that it is likely to suffer irreparable injury. The Court should therefore reconsider its Order and deny Plaintiff leave to take early discovery.

### III. The Court Should Quash the Subpoena

Because the Court should reconsider its Order to deny Plaintiff leave to conduct early

discovery, the Court should also quash the Subpoena.

Assuming *arguendo* that the Court does not reconsider its Order, the Court nevertheless has the power to quash a subpoena under Fed R. Civ. P. 45(c)(3)(A). "[T]he issuing court must quash or modify a subpoena that: … (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed R. Civ. P. 45(c)(3)(A). "[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Singletary v. Sterling Transp. Co.*, Case No. 2:12cv298, at *6 (D.J. Morgan) (E.D. Va. Nov. 7, 2012) (citing *Cook v. Howard*, 2012 WL 3634451, at *6 n.7 (4th Cir. Aug. 24, 2012)). Thus, "[t]his undue burden category [under Fed. R. Civ. P. 45(c)(3)(A)(iv)] 'encompasses situations where the subpoena seeks information irrelevant to the case.'" *Id.* (quoting *Cook v. Howard*, 2012 WL 3634451, at *6 n.7). "Moreover, '[a] subpoena imposes an undue burden on a party when [it] is overbroad.'" *Id.* (quoting *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008)). Some courts have also taken into account "[t]he fact that the subpoenaed party is a non-party" as part of determining whether there is an undue burden. *Wi-LAN, Inc. v. LG Elecs. Inc.*, Case No. 10 CV 7721, at *4 (D.J. Zagel) (N.D. Ill. Jan. 18, 2011) (citing *Morrow v. Air Ride Technologies*, Inc. 2006 U.S. Dist. LEXIS 96651, at *2 (S.D. Ind. Mar. 6, 2006)). A court can also quash a subpoena when it is intended to harass the object of the subpoena. *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003) (upon consideration of motion to quash, court should consider whether "the subpoena was issued primarily for purposes of harassment").

Z.L. requests that the Court quash the Subpoena on the grounds that service was deficient; that the information the Subpoena seeks is overbroad, vague, ambiguous, and fails to identify the information sought with reasonable particularity; that the Subpoena seeks irrelevant information

or information not reasonably calculated to lead to admissible evidence; that the Subpoena seeks information in the custody and control of others or is available to Plaintiff from some other source that is more convenient, less burdensome, or less expensive, such as W.L.'s ISP; and that the purpose of the Subpoena is to harass Z.L.

 First, service was deficient.  Per Fed. R. Civ. P. 45(b)(1): "[s]erving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law."  Plaintiff has not filed any Certificate of Service demonstrating service of the Subpoena upon Z.L.  Plaintiff also has not tendered the fees for one day's attendance or mileage to Z.L., despite requiring Z.L. to appear for a deposition on January 16, 2013.  Thus, service under the Federal Rules is deficient, and the Subpoena should be quashed.

 Second, the Subpoena commands Z.L. to produce its "work schedule for April 10, 2011 – April 17, 2011 and MAC addresses for each computer, tablet, or PDA owned by you on April 14, 2011."  This demand is overly broad, ambiguous, vague, and seeks irrelevant information or information not reasonably calculated to lead to admissible evidence.  First, it is not at all obvious what relevance, if any, Z.L.'s work schedule has on the issue of copyright infringement.  Even if Z.L.'s work schedule were somehow relevant, the request is also overbroad as to 1) scope because it does not describe what aspects of Z.L.'s work schedule to produce and 2) time because Plaintiff's only evidence that Z.L. committed copyright infringement was Z.L.'s alleged IP address on *one* particular time on one particular date, not an entire range of dates.  Doc. 1-1. Second, the MAC address requests are also unreasonable.  According to Wikipedia, "a Media Access Control address … is a unique identifier assigned to network interfaces for communications on the physical network segment."  A true and correct copy of a print-out of

Wikipedia's webpage on MAC addresses is attached hereto and made a part hereof as Exhibit B. Plaintiff has not explained how a list of MAC addresses is relevant to, or will reasonably lead to, the "true identity" of Z.L. Additionally, it is not clear how Z.L., a normal Internet user, will be able to determine the MAC addresses of various devices from almost two years ago. Thus, the Subpoena should be quashed for being overly broad, ambiguous, vague, and seeking irrelevant information.

Third, the information that Plaintiff seeks may be in the custody and control of others, or may be available to Plaintiff from some other source that is more convenient, less burdensome, or less expensive. A normal Internet user like Z.L. does not know how to access MAC addresses from two years ago.

Fourth, given the dubious nature of Plaintiff's motion for early discovery and the overly broad, irrelevant information that the Subpoena seeks, it seems evident that Plaintiff's purpose in deposing and subpoenaing Z.L. is to harass it, without subjecting Plaintiff to the expenses and time delays that the litigation process would normally impose if Plaintiff had named Z.L. as the defendant. Therefore, because the primary purpose of the Subpoena is to harass Z.L., the Court should quash the Subpoena.

### IV. Conclusion

Plaintiff has not shown "unusual circumstances" that would prejudice it and thus warrant the need for expedited discovery. Z.L. believes that Plaintiff's reasons for seeking expedited discovery, when Plaintiff already knows Z.L.'s identity and contact information, are suspect, and that Plaintiff is seeking to improperly circumvent the Federal Rules of Civil Procedure so that it may take broad discovery of Z.L. through direct deposition, while avoiding the expense and delay that normal litigation and normal discovery would incur and also avoiding subjecting

Plaintiff to discovery requests from Z.L.  Z.L. suspects that Plaintiff's motives are to harass Z.L. into settling or to obtain information from Z.L. that could be used to make Plaintiff's case against Z.L. easier.  What Plaintiff proposes could just as easily be accomplished, though admittedly not as cheaply or quickly for Plaintiff, as going through the litigation process, and the litigation process would be much fairer to Z.L., who would be afforded the opportunity to file a Motion to Dismiss, to Answer, and/or to submit discovery requests to Plaintiff.  Consequentially, Z.L. respectfully requests that the Court reconsider its Order, deny Plaintiff leave to take early discovery, and quash the Subpoena.  In the alternative, Z.L. requests that the Court quash the Subpoena for the reasons discussed *supra*.

Dated: January 15, 2013    JOHN DOE 2 ("Z.L.")

       /s/ Domingo J. Rivera
Domingo J. Rivera, Esq. (VSB #71407)
Domingo J. Rivera, Attorney at Law, PLC
8527 Mayland Drive, Suite 107
Richmond, VA 23294
Telephone: 804-332-6585
Fax: 866-651-2004
Email: djr@cyberinternetlawyer.com
*Counsel for Defendant John Doe 2 ("Z.L.")*

**<u>CERTIFICATE</u>**

  I hereby certify that on the 15th day of January, 2013 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

Timothy V. Anderson
Anderson & Associates, PC
2492 North Landing Rd Ste 104
Virginia Beach, VA 23456
757-301-3636 Tel
757-301-3640 Fax
timanderson@virginialawoffice.com
*Attorney for Plaintiff*

              /s/ Domingo J. Rivera
              Domingo J. Rivera, Esq. (VSB #71407)